IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES W. NEWSOM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-1446-N |
| | § | |
| RELIANCE STANDARD LIFE INS. CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52(a)(1).[1]  Plaintiff Newsom seeks relief from the decision of Defendant Reliance Standard Life Insurance Company ("Reliance") to deny Newsom long term disability benefits because it determined he was not eligible.  It is before the Court on the administrative record developed below, *see* Joint Submission of Administrative Record [12] ("Rec."), and the briefs of the parties.  *See* ECF 13-18.  The parties have agreed that review by the Court is de novo based on the written administrative record.  *See* Joint Motion Regarding Trial Submission [10], Order [11]; *accord Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246 (5th Cir. 2018) (en banc).  Because the Court finds that Newsom was eligible for long term disability, it awards him the unpaid benefits.

---

[1] The Court's findings of fact are primarily in Parts I through III, and IV.B of this Order. To the extent the Court makes findings in other parts of this Order, it will so indicate by using the word "find."  Any findings of fact that are more properly considered as conclusions of law are adopted by the Court as such, and vice versa.

ORDER – PAGE 1

## I. FACTUAL BACKGROUND

In 2017, Newsom was a 51 year old software architect working for Lereta L.L.C. ("Lereta").[2] Lereta provided its employees with both short term disability ("STD") and long term disability ("LTD") benefits as part of an ERISA plan. The benefits were funded by insurance policies issued by Reliance (the "STD Policy" and the "LTD Policy"), which also administered the plan.

The STD Policy provides coverage to "Eligible Classes," which means "Each active, Full-time Employee of" Lereta, where "'Full-time' means working for [Lereta] for a minimum of 30 hours during a person's regular work week." Rec. 8-9. The STD Policy does not define "a person's regular work week."

The STD Policy pays benefits if a covered employee is "Disabled," where: "'Disabled' means the insured is: (1) unable to do the material duties of his/her job; and (2) not doing any work for payment; and (3) under the regular care of a physician." Rec. 9, 18. The STD Policy provides:

> We will pay Partial Disability Benefits if: (1) an Insured is Partially Disabled; and (2) an Insured accepts Rehabilitative Employment. . . . "Rehabilitative Employment" . . . includes the Insured performing all of the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. It does not include performing all of the material duties of his/her regular occupation on a full-time basis. "Partially Disabled" . . . means that the Insured is unable to perform the material duties of his/her own job and is under the regular care of a Physician.

Rec. 21.

---

[2] The Court believes the facts in this section are substantially undisputed.

ORDER – PAGE 2

The STD Partial Disability Benefit pays, for up to 26 weeks of disability, a benefit of up to 70% of the employee's pre-disability weekly earnings, except that the benefit is reduced as needed to ensure the benefit in combination with other specified income does not exceed the employee's pre-disability weekly earnings.  Rec. 8, 21.  Benefits are paid from "the eighth consecutive day of disability" (i.e., there is a 7-day elimination period). Rec. 8.

The LTD Policy provides: "A person is eligible for insurance under this Policy if he/she:  (1) is a member of an Eligible Class . . . ; and (2) has completed the Waiting Period [60 days of continuous employment] . . . ."  Rec. 352, 361.  The "Eligible Classes" encompass "Each active, Full-time Employee of" Lereta, where "Full-time" means "working for [Lereta] for a minimum of 30 hours during a person's regular work week." Rec. 352, 354].  The LTD Policy does not define "a person's regular work week."

The LTD Policy further provides:

> "Totally Disabled" and Total Disability" mean, that as a result of an Injury or Sickness:
> (1) during the Elimination Period . . . ,  an insured cannot perform the material duties of his/her Regular Occupation;
> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis.  An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.
> (b) "Residual Disability" means being Partially Disabled during the Elimination Period.  Residual Disability will be considered Total Disability.

Rec. 355.

The "Elimination Period" means "a period of consecutive days of Total Disability . . . for which no benefit is payable.  It begins on the first day of Total Disability."  Rec.

ORDER – PAGE 3

354. The "Elimination Period" for Class 2 employees (those working outside California) is 180 consecutive days of Total Disability. Rec. 35. The LTD Policy provides benefits equal to 60% of an eligible employee's pre-disability "Covered Monthly Earnings" less certain specified other income, until age 65, so long as the employee remains disabled. Rec. 352, 363.

## II. NEWSOM'S HEALTH

Newsom's health problems began following a motor vehicle accident in 1999. Rec. 540. He subsequently developed fibromyalgia and related conditions. *Id.* His condition slowly deteriorated until he could no longer work a 40 hour week. Rec. 542. In order to retain Newsom as an employee, Lereta reduced his scheduled work week to 32 hours, consisting of 8 hours a day, Monday through Thursday. Rec. 113. Some weeks Newsom was unable to work his full scheduled 32 hour week. Rec. 460. Ultimately, his last scheduled full 32 hour work week was October 16, 2017. Rec. 337-40, 709-10. After that date, Lereta scheduled him to work part-time until January 30, 2018, when he was no longer able to work at all. Rec. 432, 542.

The details around Newsom's work schedule are not precisely clear. It appears from Newsom's timecards that he actually worked[3] the following hours on the following weeks:

| Week of | Hours | >=30 |
|---------|-------|------|
| 9/11/17 | 31    | Y    |
| 9/18/17 | 27.75 |      |
| 9/26/17 | 14    |      |
| 10/2/17 | 23.25 |      |

---

[3] The time records include hours for holidays, vacation, sick leave, and jury duty. Rec. 337-40.

ORDER – PAGE 4

| Date | Hours | Y |
|---|---|---|
| 10/9/17 | 30 | Y |
| 10/16/17 | 31.25 | Y |
| 10/23/17 | 24.5 | |
| 10/30/17 | 14.75 | |
| 11/6/17 | 30 | Y |
| 11/13/17 | 32.75 | Y |
| 11/20/17 | 31.5 | Y |
| 11/27/17 | 34 | Y |
| 12/4/17 | 27.25 | |
| 12/11/17 | 19.5 | |
| 12/18/17 | 27.5 | |
| 12/25/17 | 24.75 | |
| 1/1/18 | 29.25 | |
| 1/8/18 | 28.75 | |
| 1/15/18 | 29 | |
| 1/22/18 | 27.75 | |
| 1/29/18 | 12.5 | |

Rec. 337-40, 460-62.

Newsom had a prior STD leave not in dispute in this case. He returned to work from that leave around September 4, 2017. Rec. 112, 432, 542.[4] Although the exact date is unclear, the Court finds that Lereta scheduled Newsom for reduced weekly hours of four 8-hour days (32 hours) per week on or shortly after September 4, 2017. Rec. 113. The Court infers that Lereta's intent was for Newsom to remain a full-time employee and retain

---

[4] There is a Reliance claim notes entry that appears to reflect that Newsom returned to work from the earlier claim on 9/14/18. Rec. 113. The 2018 references in that note appear to be typos and should refer to 2017. It is undisputed that Newsom did not work for Lereta after January 30, 2018. It also appears that the reference to September 14 is a typo. Immediately above that note, on 12/26/18, Reliance requested Newsom's time records beginning September 4. Also, Newsom's time records indicate he worked on September 11 and 12, which is inconsistent with return to work on September 14. Rec. 460 (that tabulation does not start until September 11, so it is silent on whether Newsom worked hours on September 4-8). Thus, it is relatively clear that Newsom returned to work before September 14. In any event, the exact date Newsom returned to work after his earlier STD leave is not material.

ORDER – PAGE 5

benefits such as STD and LTD. Although the exact date is unclear, the Court finds that Lereta placed Newsom on part-time status (scheduled <30 hours per week) on or around October 23, 2017.

On this record, it is undisputed that Newsom was partially disabled beginning October 23, 2017, and totally disabled beginning January 31, 2018. *See generally* Rec. 540-44 (Newsom's personal narrative); *id.* 546-48 (Newsom's treating physician); *id.* 550-73 (neuropsychological examination); *id.* 645-60 (statements of friends, family and co-worker).

### III. PROCEDURAL HISTORY OF NEWSOM'S LTD CLAIM

#### A. Newsom's STD Claim

Newsome first submitted his STD claim on February 23, 2018. Reliance apparently did not receive that paperwork, so Newsom resubmitted it on March 23, 2018. Rec. 542. The claim form, dated 2/22/18, indicated that Newsom's "Date Last Worked" was January 30, 2018. Rec. 468-71. Reliance initially denied Newsom's STD claim on the basis that he had not provided medical evidence of his disability as of January 30, 2018. Rec. 126-29. Newsom appealed that decision. Rec. 196-331. Upon further review, the STD claim examiner notified Newsom that Reliance was considering moving his date of loss back, since it appeared he may have had partial disability before January 30, 2018. Rec. 97, 112. The STD claim examiner ultimately decided to push Newsom's date of loss back to October 23, 2017. Rec. 113. Accordingly, Newsom received STD benefits from October 30, 2017 (eighth day after disability) through April 30, 2018, including partial disability benefits from October 30, 2017 through January 29, 2018. Rec. 78.

ORDER – PAGE 6

### B. Newsom's LTD Claim

Reliance's LTD claim examiner denied Newsom's LTD claim. Rec. 452-54. Based on Newsom's last day of work (1/30/18), the examiner treated Newsom's date of disability as January 31, 2018. Because Newsom did not work 30 hours a week or more in the weeks before that date, the examiner determined that Newsom was not a full time employee and thus not eligible for LTD benefits. *Id.* Newsom administratively appealed that denial. Rec. 709-10. Reliance affirmed its decision on appeal. Rec. 458-64. Newsom timely filed the instant action under 29 U.S.C. § 1132(a)(1)(B), (g)(1) seeking unpaid benefits due and attorneys' fees and costs.

### IV. NEWSOM IS ENTITLED TO LTD BENEFITS

### A. Regular Work Week Means Scheduled Work Week

The LTD Policy makes "[e]ach active Full-time employee of" Lereta eligible for LTD benefits. Rec. 352. "'Full-time' means working for [Lereta] for a minimum of 30 hours during a person's regular work week." Rec. 354. The term "regular work week" is not defined. The Court interprets plan terms like any other insurance contract. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989). The court must "interpret the contract language 'in an ordinary and popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (quoting *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 n.1 (5th Cir. 1995)). "But if the policy language is ambiguous, we construe it 'strictly against the insurer and liberally in favor of

the insured,' . . . ." *Am. Int'l Spec. Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 563 (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987)).

Reliance seizes on the word "working," arguing that it means the hours the person actually worked. Newsom, on the other hand, focuses on the phrase "regular work week," arguing that the modifier "regular" indicates something other than actual hours worked. On balance, the Court finds Newsom's argument more persuasive.

The most pertinent definition of "regular" from the *Oxford English Dictionary* is: "Having the usual, typical, or expected attributes, qualities, parts, etc.; normal, ordinary, standard. Now chiefly U.S."[5] The most pertinent definition of "regular" from the *Merriam-Webster Dictionary* is: "normal, standard."[6] The Court thus holds that "regular work week" as used in the LTD Policy means "normal, ordinary, standard work week," or the scheduled work week.

This construction has several advantages over Reliance's proposed construction. First, it removes minor variations in actual hours worked from the eligibility determination and makes eligibility more predictable and ascertainable.[7] Reliance's proposed construction, in contrast, results in "Newsom [falling] in and out of eligibility frequently." Rec. 462 (denial of LTD appeal). Also, Reliance apparently contends eligibility is

---

[5] https://www.oed.com/view/Entry/161414?redirectedFrom=regular#eid [last visited August 26, 2020].

[6] https://www.merriam-webster.com/dictionary/regular [last visited August 26, 2020].

[7] At minimum, the use of "regular work week" appears to indicate something other than hours actually worked in the preceding week.

ORDER – PAGE 8

determined on a week-by-week basis.  Second, Newsom's construction leaves the employer in control over which employees are full time and which are part time.  It seems appropriate for the employer to determine which of its employees are full time and which are part time, rather than the vagaries of individual work weeks.  Here, Lereta scheduled Newsom for 32 hours per week so that he would retain his STD and LTD benefits.  The Court is reluctant to adopt a construction that would deny an employee a benefit the employer intended the employee to retain.  Finally, if Reliance had wanted to base eligibility on the hours actually worked the week preceding the partial or total disability, it certainly could have done so more clearly, for example: "Full-time" means actually working for Lereta a minimum of 30 hours the work week before the date of disability.

Accordingly, the Court holds that the plain meaning of "regular work week" is equivalent under these facts to "scheduled work week."  In the alternative, Newsom's construction is, at minimum, a plausible construction.  In that case, this Court must "apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Wegner*, 129 F.3d at 818.  Either way, the Court ends up construing "regular work week" as equivalent to "scheduled work week."

### B. *Newsom's Date of Disability Was October 23, 2017*

The Court must resolve one remaining factual dispute.  Newsom and the STD claim examiner contend Newsom's date of disability was October 23, 2017 – the first day after he could no longer work full time.  Reliance and the LTD claim examiner contend Newsom's date of disability was January 31, 2018 – the first day after he could no longer work at all.

ORDER – PAGE 9

In pertinent part, the LTD Policy provides: "'Partial Disability' mean[s] that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis . . . ." Rec. 355.  It further provides: "'Residual Disability' means being Partially Disabled during the Elimination Period.  Residual Disability will be considered Total Disability."  *Id.*  Finally, it defines "Elimination Period" as "a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable.  It begins on the first day of Total Disability."  Rec. 354.  The Schedule of Benefits page states that the length of the Elimination Period for employees working outside the State of California is 180 consecutive days of Total Disability.  Rec. 352.  Thus, the Elimination Period is 180 consecutive days of Total Disability, beginning on the first day of Total Disability.[8]

As of October 23, 2017, Newsom was unable to perform the material duties of his job on a full time basis.  Therefore, Newsom was partially disabled as of that date.  The elimination period started as of October 23, 2017.  Newsom was thus partially disabled during the elimination period.  He had residual disability, which is considered total disability, as of October 23, 2017.  The Court therefore finds that Newsom's date of disability was October 23, 2017.

This is consistent with Reliance's own determination in connection with Newsom's STD claim.  The STD Policy uses similar definitions.  Rec. 8-10, 18, 21.  The parties disagree on what importance the Court should place on that earlier determination.  Reliance

---

[8] These definitions are somewhat circular.

ORDER – PAGE 10

argues strenuously that it is not bound in the LTD claim by what it earlier determined in the STD claim, and that the examiners had different documentation in making their respective determinations. Be that as it may, the Court has on its fact finder hat in the context of this paper trial. As the fact finder, the Court finds it very probative that Reliance found Newsom's date of disability to be October 23, 2017 in the STD claim. That fact further supports the Court's fact finding that Newsom's date of disability was October 23, 2017.[9]

Reliance argues that Newsom's date of disability cannot be October 23, 2017 because he worked full time the weeks of November 6, 13, 20, and 27, 2017. There are at least three problems with that argument. First, Reliance did not raise it as a reason for denying Newsom's LTD claim at the administrative level. Rec. 452-54 (initial denial); Rec. 458-64 (denial on appeal). But an administrator cannot "raise[] new grounds for denial in the federal courts that were not raised at the administrative level." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154-55 (5th Cir. 2009). Thus, Reliance has waived that argument.

Second, this argument does not survive the Court's construction of "regular work week." As the Court has explained above, under that construction whether Newsom was working full time depends on whether he was scheduled to work 30 or more hours a week. If Newsom was scheduled to work 30 or more hours, he was full time, regardless whether

---

[9] Reliance's position leads to an unfortunate incentive for employees not to work as much as they are able. If you work part time before giving up on work entirely, according to Reliance, you would lose your STD and LTD benefits.

ORDER – PAGE 11

he might have actually worked less than 30 hours.  Conversely, if Newsom was scheduled to work less than 30 hours, he was not full time, *even if he may have actually worked slightly more*.  As the Court has previously found, after October 23, 2017, Newsom was not scheduled to work 30 or more hours.  Thus the fact that he may have worked slightly more than 30 hours those weeks in November does not affect his eligibility for LTD benefits.

Third, Reliance's argument ignores pertinent policy language.  The LTD Policy provides:

> Interruption Period:  If, during the Elimination Period, an Insured returns to Active Work for less than 30 days, then the same or related Total Disability will be treated as continuous.  Days that the Insured is Actively at Work during this interruption period will not count towards the Elimination Period.

Rec. 354.

> "Actively at Work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed.  This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness.

*Id.*  Note that Active Work must be performed on a full time basis.  Because Newsom was not scheduled to work 30 hours or more during those weeks in November, he was not Actively at Work, and those weeks do not interrupt the elimination period.

Moreover, even if the Court were to consider that Newsom worked more than thirty hours for those four weeks, and even if the Court were to adopt Reliance's policy construction, it still would not impair Newsom's eligibility for LTD benefits.  At most, those 28 days would constitute an Interruption Period that would delay Newsom's

ORDER – PAGE 12

entitlement to LTD benefits by extending the Elimination Period for a correlative 28 days, but would not otherwise impair Newsom's right to such benefits.

The Court thus finds that Newsom's date of disability was October 23, 2017.

### C. *Newsom Was Eligible for LTD*

With Newsom's date of disability determined as October 23, 2017, the Court can now determine whether Newsom was eligible for LTD. The Court has previously found that Newsom was scheduled to work 32 hours per week from September 4, 2017 through October 21, 2017. Thus, Newsom qualified as a full time employee of Lereta prior to his disability, and was therefore eligible for LTD benefits. It is worth noting that even under Reliance's proposed construction Newsom would still be eligible as he worked thirty or more hours the two weeks before his date of disability. The Court concludes that Newsom was and is eligible for LTD benefits.

### V. NEWSOM IS ENTITLED TO LTD BENEFITS

Reliance argues that if the Court gets to this point, it should remand for Reliance to determine in the first instance whether Newsom is disabled. In support of that position, it cites *Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601 (7th Cir. 2008). For several reasons, *Pakovich* is distinguishable from the circumstances here.[10]

Pakovich worked as a sales representative for Verizon, which had an ERISA plan providing long term disability benefits. *Id.* at 602. For the first 24 months, the plan provided benefits for "own occupation" disability, after which it provided benefits for "any

---

[10] Reliance cites no cases supporting remand from the Fifth Circuit or from district courts within the Fifth Circuit.

ORDER – PAGE 13

occupation" disability. *Id.* Although her claim was initially approved, a new plan administrator caused Pakovich to be examined by different physicians and decided to terminate her "own occupation" benefits. The administrator also told her that it would, in the future, make a determination of "any occupation" benefits. *Id.* at 603.

Pakovich filed suit in federal district court. The district court first held that the administrator's decision to terminate "own occupation" benefits was arbitrary and capricious. *Id.* The district court then went on to determine in the first instance that Pakovich was not entitled to "any occupation" benefits. *Id.* Pakovich appealed this second holding, arguing that the administrator was entitled to make the initial determination regarding "any occupation" benefits. The Seventh Circuit agreed and reversed the district court's second holding to allow for remand to the administrator.

The court of appeals relied on several factors not present here. First, the plan there gave the administrator discretion and was reviewable only under an arbitrary and capricious standard. *Id.* at 606. The parties agree here that de novo review by the Court is the standard. In *Pakovich*, there was no decision at the administrative level on "any occupation" benefits for the district court to review with deference. *Id.* Here, the question before the Court – own occupation benefits – is the precise question Reliance decided at the administrative level, and this Court's review of that decision is de novo, not deferential. In *Pakovich*, the administrative record was not developed on the "any occupation" issue. *Id.* at 607. Here the record is fully developed regarding Newsom's disability – at least by Newsom; the only reason it may not be developed by Reliance is because of Reliance's

choice not to develop it. This Court thus finds *Pakovich* is not persuasive on the question of remand.

The Court believes that remand is not appropriate for two additional reasons. First, Reliance is limited before this Court to defending the reasons on which it relied at the administrative level for denial. *See Lafleur*, *supra*. Remanding to give Reliance a second bite at the denial apple would violate that rule. Second, allowing plan administrators the ability to seriatim deny benefits for different reasons would unduly prolong the benefit process. Accordingly, the Court will not remand for Reliance to have a second chance to decide whether Newsom is disabled.

On the merits, the decision is easy. The Court has already found that the undisputed record shows that Newsom is disabled and entitled to benefits in the amount of $194,290.72.[11]

## CONCLUSION

The Court has determined that "regular work week" should be construed as "scheduled work week." Under that construction, the record shows that Newsom is eligible for LTD benefits, and, being disabled, is entitled to an award of past benefits. The Court does not address "any occupation" disability and expresses no opinion regarding future

---

[11] Reliance complains that awarding the full amount of benefits improperly fails to credit Reliance for any other income earned by Newsom. *See, e.g.*, Reliance Response at 3 [16]. On this record there is no evidence of any offset or reduction to which Reliance is entitled.

ORDER – PAGE 15

benefits.  Newsom may seek an award of attorneys' fees and expenses pursuant to Rule 54(d)(2).[12]

Signed September 9, 2020.

_____
David C. Godbey
United States District Judge

---

[12] Reliance has asserted what it calls affirmative defenses.  The Court agrees that those are not "true" affirmative defenses, but rather arguments that Newsom cannot prove his case.  Having found in favor of Newsom on the merits, the Court has, of necessity, rejected those contentions.  They do not require separate discussion.

ORDER – PAGE 16